**UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
OCALA DIVISION**

ELIZABETH
TORRES-LABOY,

        Plaintiff,

v.                                                                                    Case No. 5:23-cv-733-JRK

LELAND C. DUDEK,
Acting Commissioner of Social
Security, [1]

        Defendant.

---

## <u>OPINION AND ORDER</u>[2]

### <u>I.   Status</u>

Elizabeth Torres-Laboy ("Plaintiff") is appealing the Commissioner of the

Social Security Administration's ("SSA('s)") final decision denying her claim for

disability insurance benefits ("DIB"). Plaintiff's alleged inability to work is the

result of epilepsy, grand mal seizures, and endometritis. Transcript of

Administrative Proceedings (Doc. No. 7; "Tr." or "administrative transcript"),

---

[1]   Leland C. Dudek became the Acting Commissioner of Social Security in February 2025. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Mr. Dudek is substituted as Defendant in this suit. No further action need be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

[2]   The parties consented to the exercise of jurisdiction by a United States Magistrate Judge. <u>See</u> Order Regarding Consent to Magistrate Judge Jurisdiction in Social Security Appeals (Doc. No. 117), Case No. 3:21-mc-1-TJC (outlining procedures for consent and Defendant's generalized consent to Magistrate Judge jurisdiction in social security appeals cases); consent by Plaintiff indicated in docket language for Complaint (Doc. No. 1).

filed February 20, 2024, at 84, 93, 288. Plaintiff protectively filed an application

for DIB on September 25, 2020, alleging a disability onset date of February 1,

2019.[3] Tr. at 260-61. The application was denied initially, Tr. at 84-91, 92, 115-

18, and upon reconsideration, Tr. at 93-101, 102, 120-23.

On December 6, 2022, an Administrative Law Judge ("ALJ") held a

hearing,[4] during which he heard testimony from Plaintiff, who was represented

by counsel, and a vocational expert ("VE"). See Tr. at 43-64. On March 29, 2023,

the ALJ issued a Decision finding Plaintiff not disabled through the date of the

Decision. See Tr. at 28-37.[5]

Thereafter, Plaintiff sought review of the Decision by the Appeals Council

and submitted a brief authored by her counsel. See Tr. at 4-5 (Appeals Council

exhibit list and order), 254-56 (request for review), 347-50 (brief). On October

27, 2023, the Appeals Council denied Plaintiff's request for review, Tr. at 1-3,

thereby making the ALJ's Decision the final decision of the Commissioner. On

December 20, 2023, Plaintiff commenced this action under 42 U.S.C. § 405(g)

---

[3]    Although actually completed on September 28, 2020, see Tr. at 260, the protective filing date for the DIB application is listed elsewhere in the administrative transcript as September 25, 2020, see, e.g., Tr. at 84, 93, 262.

[4]    Although Plaintiff requested a videoconference hearing, evidently the hearing was held via telephone. See Tr. at 28, 45, 64, 126-31, 135-40, 184-88, 236-38, 239. During the hearing, Plaintiff did not object to proceeding via telephone.

[5]    The administrative transcript also contains an ALJ decision adjudicating earlier-filed claims for DIB and supplemental security income (SSI). See Tr. at 70-78. The adjudication of those claims is not at issue here.

by timely filing a Complaint (Doc. No. 1), seeking judicial review of the Commissioner's final decision.

On appeal, Plaintiff challenges: 1) "[w]hether the ALJ provided an adequate analysis of the supportability and consistency factors when evaluating the persuasiveness of the medical opinions of record and assessing Plaintiff's residual functional capacity" ("RFC"); and 2) whether "the ALJ failed to determine the range of fluctuation of Plaintiff's symptoms when assessing the persuasiveness of medical opinions and [the RFC]." Memorandum in Support of Plaintiff (Doc. No. 15; "Pl.'s Mem."), filed April 4, 2024, at 12, 23 (emphasis omitted). On April 26, 2024, Defendant filed a Memorandum in Support of the Commissioner's Decision (Doc. No. 16; "Def.'s Mem.") addressing Plaintiff's arguments. Plaintiff on May 10, 2024 filed Plaintiff's Memorandum of Law in Reply (Doc. No. 17; "Reply").

After a thorough review of the entire record and consideration of the parties' respective arguments, the undersigned finds that the Commissioner's final decision is due to be reversed and remanded for reconsideration of the medical opinion evidence and Plaintiff's RFC. On remand, this reconsideration may impact the Administration's consideration of the remaining issue on appeal. For this reason, the Court need not address the parties' arguments on that issue. See Jackson v. Bowen, 801 F.2d 1291, 1294 n.2 (11th Cir. 1986) (per curiam) (declining to address certain issues because they were likely to be

reconsidered on remand); <u>Demenech v. Sec'y of the Dep't of Health & Human Servs.</u>, 913 F.2d 882, 884 (11th Cir. 1990) (per curiam) (concluding that certain arguments need not be addressed when the case would be remanded on other issues).

## II.   The ALJ's Decision

When determining whether an individual is disabled,[6] an ALJ must follow the five-step sequential inquiry set forth in the Code of Federal Regulations ("Regulations"), determining as appropriate whether the claimant (1) is currently employed or engaging in substantial gainful activity; (2) has a severe impairment; (3) has an impairment or combination of impairments that meets or medically equals one listed in the Regulations; (4) can perform past relevant work; and (5) retains the ability to perform any work in the national economy. 20 C.F.R. § 404.1520; <u>see also</u> <u>Simon v. Comm'r, Soc. Sec. Admin.</u>, 7 F.4th 1094, 1101-02 (11th Cir. 2021) (citations omitted); <u>Phillips v. Barnhart</u>, 357 F.3d 1232, 1237 (11th Cir. 2004). The claimant bears the burden of persuasion through step four, and at step five, the burden shifts to the Commissioner. <u>Bowen v. Yuckert</u>, 482 U.S. 137, 146 n.5 (1987).

---

[6]    "Disability" is defined in the Social Security Act as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).

Here, the ALJ followed the five-step inquiry. <u>See</u> Tr. at 31-37. At step one, the ALJ determined that Plaintiff "has not engaged in substantial gainful activity at any time relevant to th[e D]ecision." Tr. at 31 (emphasis and citation omitted). At step two, the ALJ found that Plaintiff "has the following severe impairment: a seizure disorder." Tr. at 31 (emphasis and citation omitted). At step three, the ALJ found that Plaintiff "does not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 [C.F.R.] Part 404, Subpart P, Appendix 1." Tr. at 32 (emphasis and citation omitted).

> The ALJ determined that Plaintiff has the following RFC:
>
> [Plaintiff can] perform light work as defined in 20 CFR [§] 404.1567(b) with these specific restrictions: she can lift, carry, and push/pull twenty pounds occasionally and ten pounds frequently; in an eight-hour workday, she can sit for six hours, stand for six hours, and walk for six hours; she can never climb ladders, ropes, or scaffolds; she can never work at unprotected heights; she can never work with moving mechanical parts; she can tolerate occasional exposure to dust, odors, fumes, and pulmonary irritants; she can occasionally work in extreme cold; she can occasionally tolerate exposure to vibration and moderate noise; she is limited to simple, routine tasks; she is limited to simple work-related decisions.

Tr. at 32 (emphasis omitted).

At step four, the ALJ found that Plaintiff "is able to perform past relevant work" as a "sales clerk." Tr. at 35 (some emphasis and citation omitted). The ALJ then made alternative findings at step five. Tr. at 35-36. After considering Plaintiff's age ("a younger individual age 18-49"), education ("limited"), work

experience, and RFC, the ALJ relied on the VE's testimony and found that "there [are] jobs that exist in significant numbers in the national economy that [Plaintiff can] perform[]," such as "marker," "mail sorter," and "sales attendant." Tr. at 36 (some emphasis and citation omitted). The ALJ concluded Plaintiff "was not under a disability . . . at any time from February 1, 2019, the alleged onset date, through the date of th[e D]ecision." Tr. at 37 (emphasis and citation omitted).

### III.   Standard of Review

This Court reviews the Commissioner's final decision as to disability pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3). Although no deference is given to the ALJ's conclusions of law, findings of fact "are conclusive if . . . supported by 'substantial evidence.'" Doughty v. Apfel, 245 F.3d 1274, 1278 (11th Cir. 2001) (citing Falge v. Apfel, 150 F.3d 1320, 1322 (11th Cir. 1998)). "Substantial evidence is something 'more than a mere scintilla, but less than a preponderance.'" Dyer v. Barnhart, 395 F.3d 1206, 1210 (11th Cir. 2005) (quoting Hale v. Bowen, 831 F.2d 1007, 1011 (11th Cir. 1987)). The substantial evidence standard is met when there is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Falge, 150 F.3d at 1322 (quoting Richardson v. Perales, 402 U.S. 389, 401 (1971)); see also Biestek v. Berryhill, 587 U.S. 97, 103 (2019); Samuels v. Acting Comm'r of Soc. Sec., 959 F.3d 1042, 1045 (11th Cir. 2020) (citation omitted). It is not for this Court to

- 6 -

reweigh the evidence; rather, the entire record is reviewed to determine whether "the decision reached is reasonable and supported by substantial evidence." <u>Cornelius v. Sullivan</u>, 936 F.2d 1143, 1145 (11th Cir. 1991) (citation omitted). The decision reached by the Commissioner must be affirmed if it is supported by substantial evidence—even if the evidence preponderates against the Commissioner's findings. <u>Crawford v. Comm'r of Soc. Sec.</u>, 363 F.3d 1155, 1158-59 (11th Cir. 2004) (per curiam).

## IV.    Discussion

Plaintiff argues generally that the ALJ erred in assessing the medical opinion evidence, but she focuses solely on an opinion from treating neurologist Augustine V. Joseph, M.D. <u>See</u> Pl.'s Mem. at 12-23; Reply at 1-7. According to Plaintiff, the ALJ's reasons for finding Dr. Joseph's opinion to be "not persuasive" are unsupported by the evidence. <u>See</u> Pl.'s Mem. at 12-23; Reply at 1-7. Responding, Defendant argues the ALJ properly analyzed the opinion and complied with applicable regulations. Def.'s Mem. at 1-2, 5-18.

The SSA revised the rules regarding the evaluation of medical evidence for claims filed on or after March 27, 2017. <u>See</u> <u>Revisions to Rules Regarding the Evaluation of Medical Evidence</u>, 82 Fed. Reg. 5844, 5844 (January 18, 2017); <u>see also</u> 82 Fed. Reg. 15,132 (March 27, 2017) (amending and correcting the final Rules published at 82 Fed. Reg. 5,844). Under the new rules and Regulations, "A medical opinion is a statement from a medical source about

- 7 -

what [the claimant] can still do despite [his or her] impairment(s) and whether [the claimant] ha[s] one or more impairment-related limitations or restrictions in the following abilities:" 1) the "ability to perform physical demands of work activities"; 2) the "ability to perform mental demands of work activities"; 3) the "ability to perform other demands of work, such as seeing, hearing, or using other senses"; and 4) the "ability to adapt to environmental conditions." 20 C.F.R. §§ 404.1513(a)(2), 416.913(a)(2); see also 20 C.F.R. § 404.1502 (defining "[a]cceptable medical sources"). An ALJ need not "defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from [the claimant's] medical sources." 20 C.F.R. §§ 404.1520c(a), 416.920c(a). [7] "Because section 404.1520c falls within the scope of the Commissioner's authority and was not arbitrary and capricious, it abrogates [the United States Court of Appeals for the Eleventh Circuit's] prior precedents applying the treating-physician rule." Harner v. Soc. Sec. Admin., Comm'r, 38 F.4th 892, 896 (11th Cir. 2022).

The following factors are relevant in an ALJ's consideration of a medical opinion or a prior administrative medical finding: (1) "[s]upportability"; (2) "[c]onsistency"; (3) "[r]elationship with the claimant"; (4) "[s]pecialization"; and (5) other factors, such as "evidence showing a medical source has familiarity

---

[7]     Plaintiff filed her application after the effective date of sections 404.1520c and 416.920c, so the undersigned applies the revised rules and Regulations.

with the other evidence in the claim or an understanding of [the SSA's] disability program's policies and evidentiary requirements." 20 C.F.R. §§ 404.1520c(c), 416.920c(c). Supportability and consistency are the most important factors, and the ALJ must explain how these factors were considered. 20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2). Generally, the ALJ is not required to explain how he or she evaluated the remaining factors. 20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2). However, if the ALJ "find[s] that two or more medical opinions . . . about the same issue are both equally well-supported . . . and consistent with the record . . . but are not exactly the same, [the ALJ must] articulate how [he or she] considered the other most persuasive factors . . . ." 20 C.F.R. §§ 404.1520c(b)(3), 416.920c(b)(3).[8]

The RFC assessment "is the most [a claimant] can still do despite [his or her] limitations." 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1). It is used at step four to determine whether a claimant can return to his or her past relevant work, and if necessary, it is also used at step five to determine whether the claimant can perform any other work that exists in significant numbers in the national economy. 20 C.F.R. §§ 404.1545(a)(5), 416.945(a)(1). In assessing a

---

[8]     When a medical source provides multiple opinions, the ALJ is also not required to articulate how he or she evaluated each medical opinion individually. 20 C.F.R. §§ 404.1520c(b)(1), 416.920c(b)(1). Instead, the ALJ must "articulate how [he or she] considered the medical opinions . . . from that medical source together in a single analysis using the factors listed [above], as appropriate." 20 C.F.R. §§ 404.1520c(b)(1), 416.920c(b)(1).

claimant's RFC, the ALJ "must consider limitations and restrictions imposed by all of an individual's impairments, even those that are not 'severe.'" SSR 96-8P, 1996 WL 374184 at *5; see also Pupo v. Comm'r, Soc. Sec. Admin., 17 F.4th 1054, 1064 (11th Cir. 2021) (citing Schink v. Comm'r of Soc. Sec., 935 F.3d 1245, 1268 (11th Cir. 2019)); Swindle v. Sullivan, 914 F.2d 222, 226 (11th Cir. 1990) (stating that "the ALJ must consider a claimant's impairments in combination") (citing 20 C.F.R. § 404.1545; Reeves v. Heckler, 734 F.2d 519, 525 (11th Cir. 1984)).

Here, Dr. Joseph on February 5, 2021 filled out a Seizure Questionnaire. Tr. at 495-97. According to Dr. Joseph, Plaintiff's type of seizures are: "local-rel symptomatic episodic with partial seizure, generalized." Tr. at 495. Plaintiff has seizures three times per week lasting five minutes at a time. Tr. at 495. Dr. Joseph listed the last three dates of Plaintiff's seizures as January 28, February 1, and February 3, 2021. Tr. at 495. Precipitating factors include stress, heat, change of temperature, and menstruation. Tr. at 495. Manifestations include confusion, exhaustion, irritability, drowsiness and inability to form complete words, lasting from one to twenty-four hours after a seizure. Tr. at 495. Plaintiff has a history of urinary and fecal incontinence and injury during seizures. Tr. at 495.

Dr. Joseph wrote that Plaintiff is compliant taking medications Keppra and Aptiom but continues to have seizures. Tr. at 495. According to Dr. Joseph,

Plaintiff is unable to work even low stress jobs and is likely to be absent from work four or more days per month. Tr. at 496.

The ALJ found as follows regarding Dr. Joseph's opinion:

> [T]he seizures she described in her treatment notes in October of 2020 were not described as events with loss of consciousness. Even the seizures she describes are based on [Plaintiff's] statements; there is no indication that Dr. Joseph has witnessed any of [Plaintiff's] seizures. She noted that [Plaintiff] continued to have seizures, but her last generalized seizure had been in 2012. Dr. Joseph's neurological evaluation was unremarkable. She stated [Plaintiff] "is unable to work." She stated [Plaintiff] is compliant with medication. However, the record has noted that [Plaintiff] at times has not been compliant due to financial limitations. Dr. Joseph's statements lack support or explanation to verify the degree of limitation she describes. Her indication of medication compliance is not consistent with other evidence. I have found Dr. Joseph's assessment to be not persuasive.

Tr. at 33-34 (citations omitted).

The ALJ's findings regarding Dr. Joseph's opinion are undermined by the evidence to such a degree that the "substantial evidence" threshold is not met and reversal for reconsideration is required. First, the ALJ relies on the alleged lack of notation of loss of consciousness in the treatment notes. The particular note cited, however, as well as all of Dr. Joseph's other notes, contain the description of "loss of awareness of surroundings" with "eye roll[ing] back." Tr.

- 11 -

at 498, 501, 516. [9] While not described in the exact term of "loss of consciousness," the effect is at least similar. Moreover, later notes by neurologist Refaat ElSaid, M.D., to which the ALJ did not refer in the Decision, reflect "sometimes she loses consciousness" and has episodes twice per week. Tr. at 648, 651.

The ALJ next found that the episodes described by Dr. Joseph are based on Plaintiff's statements and that despite Dr. Joseph's statement that Plaintiff continues to have seizures, the notes reflect the last generalized seizure was in 2012. Tr. at 33. But, Plaintiff's statements about the frequency of the seizures are quite consistent across all of the treating notes. Moreover, as the ALJ recognized later in the Decision but did not resolve, Plaintiff underwent an electroencephalogram that was abnormal, Tr. at 507, providing objective support for the contention she still has seizures on an ongoing basis. Besides, the import of Dr. Joseph's statements in the treatment notes indicating Plaintiff has not had a generalized seizure since 2012, see Tr. at 498, is unclear from the ALJ's Decision.

The ALJ further found that Plaintiff had not always been compliant with her seizure medications, citing a record from 2019. Tr. at 33-34 (citing Ex. B4-F at 25, located at Tr. at 458). That record states that Plaintiff "has been

---

[9]    Dr. Joseph's notes are duplicated in the administrative transcript. The undersigned cites only one appearance for each note.

noncompliant with her Keppra for the past week because she has run out of her meds since she recently moved here from New York and has not established a local PCP." Tr. at 458. There are no other instances of medication noncompliance cited. In fact, there was even speculation by another treating neurologist that the "[p]rominent theta activity is likely to be a medication effect," Tr. at 562, evidencing that Plaintiff was in fact taking her medications.

Finally, the ALJ relied upon the lack of support or explanation to verify the degree of limitation alleged by Dr. Joseph. Tr. at 34. But, there is support in the record that for some of Dr. Joseph's cited manifestations and logical work-related limitations resulting from those manifestations. See, e.g., Tr. at 504 (notation that Plaintiff "feels sleepy and tired for [a] few hours after the seizure"), 621 (Plaintiff appeared at Advent Health after her medication was changed and had suffered a seizure, after which she "felt generally weak and 'tired.'")

In sum, the matter must be remanded for reconsideration of Dr. Joseph's opinion.

### V.   Conclusion

In light of the foregoing, it is

**ORDERED**:

- 13 -

1.    The Clerk of Court is directed to enter judgment pursuant to sentence four of 42 U.S.C. § 405(g), **REVERSING** the Commissioner's final decision and **REMANDING** this matter with the following instructions:

(A)    Reconsider Dr. Joseph's opinion in accordance with applicable regulations;

(B)    If necessary, consider Plaintiff's other argument on appeal; and

(C)    Take such other action as may be necessary to resolve this claim properly.

2.    The Clerk is further directed to close the file.

**DONE AND ORDERED** in Jacksonville, Florida on February 25, 2025.

_James R. Klindt_
JAMES R. KLINDT
United States Magistrate Judge

kaw
Copies:
Counsel of Record